**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| MARK A. MANZELLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-cv-01338-SEP |
| | ) | |
| CORIZON MEDICAL SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

      This matter comes before the Court on the application of self-represented Plaintiff Mark A. Manzella for leave to proceed in the district court without prepaying fees and costs.  The Court grants the application and assesses an initial partial filing fee of $38.53.  *See* 28 U.S.C. § 1915(b)(1).  Additionally, for the reasons discussed below, the Court directs the Clerk of Court to issue process on Defendants Angela M. Adams, Karen S. Rose, Dr. Jerry Lovelace, and Dr. William Dennis, and orders Defendants to respond to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction no later than December 20, 2022.  The Court dismisses without prejudice Plaintiff's claims against Corizon Medical Services and Centurion Medical Services.

**INITIAL PARTIAL FILING FEE**

      Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action is required to pay the entire filing fee.  If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect, an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period.  After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner forwards the monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00 until the filing fee is fully paid.  *Id.*

      Plaintiff has filed a certified inmate account statement for the six-month period from April 5, 2022, to October 5, 2022.  His account statement shows an average monthly deposit of

$192.67.  Based on that information, the Court assesses an initial partial filing fee of $38.53, which is 20 percent of Plaintiff's average monthly deposit.  *See* 28 U.S.C. § 1915(b)(1).

## LEGAL STANDARD ON INITIAL REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.  The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework."  *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004)).  However, even pro se complaints are required to "allege facts, which if true, state a claim as a matter of law."  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); s*ee also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel."  *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## THE COMPLAINT

Plaintiff is incarcerated at the Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri.  Plaintiff brings this action against Defendants Corizon

2

Medical Services, Centurion Medical Services, Heather H. Turner (Functional Unit Manager, ERDCC), Angela M. Adams (Nurse, CMS), Karen S. Rose (Nurse, CMS), Dr. Jerry Lovelace (Regional Director, CMS), and Dr. William Dennis (ERDCC Director, CMS).[1]  He sues all defendants in their individual and official capacities.

Plaintiff states that he was attacked by a fellow inmate at ERDCC on December 24, 2020.  He claims that Defendant Heather H. Turner, the Functional Unit Manager assigned to housing unit 4, was personally responsible for placing the other inmate in Plaintiff's cell with full knowledge that the other offender was volatile.  Plaintiff supports that allegation with the statement that the other "offender was having problems with his previous cellies."

After the attack, Plaintiff discovered problems with his left shoulder, back, and both feet, and he was taken to ERDCC's medical unit.  X-rays taken at the medical unit revealed Plaintiff had suffered a left shoulder fracture.  Also, a nurse reported large bruises to Plaintiff's right flank and scattered bruising on his back in the pattern of a boot.  Plaintiff was assigned to the prison's temporary care unit and was under the care of Defendant Nurse Angela M. Adams.  Plaintiff was not taken to an outside hospital or emergency room.

On January 5, 2021, additional x-rays were ordered of Plaintiff's right hip.  Results showed "both hands, both knees, both feet and ankle fractures on the right foot 3rd toe thru 5th toe show severe bruising at the base of the toes."  Additionally, "[d]isplaced rib fractures were noted . . . with large area of ecchymosis, displaced vertebra, displaced fracture noted of the 9th rib, 5th rib [] at this time."  On January 6, 2021, Dr. Galbraith recommended that Plaintiff have surgery to repair his left shoulder.  Nurse Adams did not follow up on the recommendation or schedule surgery.  On January 20, 2021, Dr. Galbraith again treated Plaintiff and recommended a CT scan and surgery.  Nurse Adams referred Plaintiff for a CT scan but did not refer him for surgery.

Plaintiff's pain persisted, and on July 21, 2021, Plaintiff had an MRI taken of his left shoulder.  Dr. Galbraith reported tears in Plaintiff's shoulder and "necrosis of the humeral head."  He referred Plaintiff again for surgery.

---

[1] On November 15, 2021, Centurian Medical Services replaced Corizon Medical Services as the medical services contractor for the Missouri Department of Corrections.  For ease of reference, the Court identifies the medical services contractor, whether Corizon or Centurian, as CMS.

On August 20, 2021, Plaintiff was treated by Dr. Aaron Gray at University Hospital. Dr. Gray noted a "healed displaced proximal humerus fracture with avascular necrosis of the humeral head, severely displaced." Dr. Gray also recommended shoulder replacement surgery.

On September 14, 2021, Dr. Jerry Lovelace, Regional Director for CMS, reviewed Plaintiff's medical file and recommendations. Dr. Lovelace was responsible for scheduling and approving medical appointments outside the prison for inmates requiring specialized care. He determined that there was insufficient information in Plaintiff's file to determine the necessity of left shoulder replacement surgery. He did not approve Plaintiff's surgery.

Meanwhile, on October 6, 2022, Plaintiff filed a formal ADA complaint and an internal resolution request (IRR) because Defendant Karen S. Rose had removed Plaintiff's lay-in from his medical file. Plaintiff's lay-in stated that he "requires a handicap and wheelchair accessible cell." Plaintiff had been moved from a handicap accessible cell to one he "could not properly use much less get in with the wheelchair." Doc. [7-1] at 2.

On October 13, 2022, Dr. Lovelace ordered an MRI of Plaintiff's lower lumbar area. On October 30, 2022, Plaintiff saw Defendant Dr. William Dennis, ERDCC's Site Director for CMS, to review Plaintiff's MRI. Dr. Dennis told Plaintiff the MRI showed only a "small glitch" in a disk in Plaintiff's lower lumbar area. Dr. Dennis stated that he and Dr. Lovelace had discussed the findings of the MRI and in their medical judgment, nothing was preventing Plaintiff from walking. Dr. Dennis told Plaintiff that his injuries and pain were "in his head."

On November 30, 2022, Plaintiff had his last visit with Dr. Dennis. The visit ended in a verbal altercation between the two. Dr. Dennis had Plaintiff removed from his office for being verbally aggressive and insulting and then issued Plaintiff a conduct violation.

Along with his Complaint, Plaintiff has filed a Motion for Temporary Restraining Order and a Preliminary Injunction. The motion alleges that on December 1, 2022, Defendants Karen S. Rose and Dr. William Dennis violated Plaintiff's constitutional rights when they took away all his medical assistance devices, including his wheelchair, in retaliation for Plaintiff's filing of an ADA complaint and an IRR. Officers came to Plaintiff's cell and removed all the medical assistance devices, including Plaintiff's wheelchair, extra pillows, egg carton mattress, and pillow wedge. The devices had been provided to Plaintiff since his injury on December 24, 2020. Plaintiff alleges that, without his wheelchair, he is unable to leave his cell. He is unable to go to the medical unit for his daily doses of insulin and pain medication, unable to shower, and

cannot move around his cell. Plaintiff's motion seeks a court order requiring Defendants to return Plaintiff's medical assistance devices.

Plaintiff alleges Defendants violated his constitutional rights by (1) not sending him to the emergency room on December 24, 2020, (2) not approving Plaintiff's shoulder surgery as recommended by Drs. Galbraith and Gray, and (3) deliberately removing all Plaintiff's medical assistance devices, including his wheelchair, in retaliation for filing an ADA complaint. For relief, Plaintiff seeks more than $250,000 in actual damages, more than $150,000 in punitive damages, and injunctive relief.

## DISCUSSION

### I. Temporary Restraining Order

Plaintiff seeks a temporary restraining order and a preliminary injunction. When considering whether to grant such relief, the Court evaluates: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest. *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981).

"[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). For an injunction to issue in the prison context, therefore, "a right must be violated," and a court must determine that "a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Id.* The Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.*

Plaintiff's motion for injunctive relief seeks an order requiring Defendants to return all medical assistive devices that were taken from him on December 1, 2022, including his wheelchair. Plaintiff states that, without his wheelchair, he is unable to go to the medical unit the requisite eight times each day—four times for insulin and four times for medication. He claims that Defendants have forbidden him from borrowing a wheelchair from another inmate and have issued him a conduct violation for borrowing a fellow inmate's wheelchair. Plaintiff states that since that conduct violation was issued on December 8, 2022, he has been "unable to get to medical at all." Doc. [7] ¶¶ 18-20. The Court notes the seriousness of Plaintiff's allegations that

5

the deprivation of a wheelchair has rendered him unable to receive daily doses of insulin and other medications.

Based on the allegations in the Complaint and the evidence before the Court, as well as the time sensitivity of the issue, the Court orders Defendants to respond to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction no later than December 20, 2022. The response must include admissible evidence relating to whether Plaintiff is receiving insulin and other medications as prescribed.

## II.     Initial Review Under 28 U.S.C. § 1915(e)(2)(B)

Plaintiff has alleged sufficient facts to state a claim for deliberate indifference to a serious medical need. *See* 28 U.S.C. § 1915(e)(2)(B). The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, an inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1237-38 (8th Cir. 1997). Proving deliberate indifference requires a showing that a "medical provider knew of and disregarded a serious medical need." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 795 (8th Cir. 2006).

Here, Plaintiff alleges that he suffered a broken left shoulder after an assault by an inmate on December 24, 2020. He claims that Defendant Nurse Adams was deliberately indifferent to his serious medical needs by not sending him to the hospital after the assault. Plaintiff further alleges that Drs. Galbraith and Gray both referred Plaintiff to surgery for his left shoulder but those referrals were denied by Nurse Adams and Drs. Lovelace and Dennis. And Plaintiff claims that prison officials are aware of his serious medical needs but have disregarded them. In sum, Plaintiff's allegations successfully state a deliberate-indifference claim.

Plaintiff also alleges Dr. Dennis and Nurse Rose removed Plaintiff's medical lay-ins from his medical file and confiscated his wheelchair, pillows, and cushion, all in retaliation for Plaintiff filing a complaint. Those allegations state a First Amendment retaliation claim.

Accordingly, the Clerk of Court must issue process on Defendants Angela M. Adams, Karen S. Rose, Dr. Jerry Lovelace, and Dr. William Dennis in their individual capacities in accordance with the waiver agreement this Court maintains with Centurion Medical Services.

Plaintiff has sued Corizon Medical Services and Centurian Medical Services for constitutional violations arising out of his medical care and treatment after his December 24,

6

2020, assault.  "A corporation acting under color of state law cannot be liable on a respondeat superior theory."  *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007).  To support a claim against such a corporation, a plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury."  *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006); *see also Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020).  Plaintiff has not alleged any constitutional violation resulting from a policy, custom, or action of Corizon or Centurian Medical Services.  Rather, he alleges that particular medical providers employed by those entities violated his constitutional rights.  Therefore, the Court dismisses Plaintiff's claims against Defendants Corizon and Centurian Medical Services for failure to state a claim.

The Court also dismisses all official-capacity claims against the individual medical defendants.  To state a claim against an official in his or her official capacity, a plaintiff must allege that a policy or custom of his or her employer is responsible for the alleged constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  "[A]s a suit against a government official in his official capacity is functionally equivalent to a suit against the employing governmental entity, a suit against a government official in only his official capacity should be dismissed as redundant if the employing entity is also named."  *King v. City of Crestwood, Mo.*, 899 F.3d 643, 650 (8th Cir. 2018).  Plaintiff has not alleged his rights were violated by any unconstitutional policy or custom of Corizon or Centurion Medical Services, thus he may not maintain official-capacity claims against their employers.

Finally, Plaintiff alleges that Defendant Heather H. Turner is "personally responsible for placing an offender in plaintiff's cell, having full knowledge that she was placing a volatile offender in the cell with this plaintiff causing this assault and battery."  Plaintiff states that Turner did not warn him and failed to protect him against assault from the inmate on December 24, 2020.  Doc. [1] ¶¶ 90-95.  Because Plaintiff's request for injunctive relief does not implicate his claims against Turner, the Court will conduct its initial review of his claims against Turner in due course.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Proceed *in forma pauperis* is **GRANTED**.  Doc. [2].

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial filing fee of $38.53 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance

7

payable to "Clerk, United States District Court," and to include upon it:  (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall issue process or cause process to issue on the Complaint pursuant to the service agreement the Court maintains with Centurion Medical Services as to Defendants Angela M. Adams, Karen S. Rose, Dr. Jerry Lovelace, and Dr. William Dennis in their individual capacities.

**IT IS FURTHER ORDERED** that Defendants Adams, Rose, Lovelace, and Dennis must respond to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction no later than **December 20, 2022**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Corizon Medical Services and Centurion Medical Services are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's official-capacity claims against Defendants Angela M. Adams, Karen S. Rose, Dr. Jerry Lovelace, and Dr. William Dennis are **DISMISSED** without prejudice.

Dated this 15th day of December, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE