# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARK A. MANZELLA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:22-cv-01338-SEP |
| | ) |
| HEATHER H. TURNER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Mark A. Manzella's Motion for Temporary Restraining Order and a Preliminary Injunction, Doc. [5], Motion to Appoint Counsel, Doc. [4], and Motion for Order to Show Cause and Appointment of Counsel, Doc. [26]. For the reasons set forth below, the Court denies the motions.

### FACTS AND BACKGROUND[1]

On December 14, 2022, together with his Complaint, Doc. [1], against Defendants Heather H. Turner, Angela M. Adams, Karen S. Rose, Dr. Jerry Lovelace, Dr. William Dennis, Corizon Medical Services, and Centurion Medical Services, Plaintiff filed a Motion for a Temporary Restraining Order and Preliminary Injunction. *See* Doc. [5]. Plaintiff argues that Defendants violated his constitutional rights when they refused to "send [him] to an emergency room for specialized care" or approve him for surgery when he was injured in an altercation with another inmate on December 24, 2020. Doc. [7] at 2. Plaintiff also claims that Defendants confiscated his medical assistive devices, including his wheelchair, in retaliation for filing an ADA complaint and internal resolution request. *Id.* at 2. According to Plaintiff, officers entered his cell and removed his wheelchair, extra pillows, egg-carton mattress, and pillow wedge. Doc. [1] at 3; Doc. [7] at 2-3. Without a wheelchair, Plaintiff claims, he cannot leave his cell, go to the medical unit for his daily doses of insulin and pain medication, shower, or move around in his cell. Doc. [1] at 16. He seeks a court order requiring Defendants to return his medical assistive devices and carry out a "plan of treatment" for his December 24, 2020, injuries. Doc. [7] at 5.

---

[1] The Court provides a detailed account of Plaintiff's factual allegations in its December 15, 2022, Order. *See* Doc. [9].

The Court ordered Defendants to respond to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction no later than December 20, 2022. *See* Doc. [9] at 6. Plaintiff's reply to Defendants' Memorandum in Opposition was received by the Court on January 9, 2023. *See* Docs. [18], [28]. Plaintiff also filed a supplemental brief, Doc. [31], on January 19, 2023, which the Court did receive and reviewed before issuing this Order.

## LEGAL STANDARD

When considering whether to issue injunctive relief, the Court evaluates: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *see also Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 n.6 (D. Minn. 2012) ("Courts in the Eighth Circuit apply the same standards to a request for preliminary injunction and temporary restraining order." (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989))).

"[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). For an injunction to issue in the prison context, "a right must be violated," and the court must determine that "a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Id.* Courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.*

## DISCUSSION

**I.   Motion for Temporary Restraining Order and a Preliminary Injunction**

As outlined in this Court's December 15, 2022, Order, Doc. [9] at 2-6, Plaintiff asks the Court to issue a temporary restraining order and preliminary injunction directing Defendants to provide Plaintiff with "proper medical care," Doc. [6] at 1, for injuries he suffered on December 24, 2020, and to restore his access to medical assistive devices, including a wheelchair. *See* Docs. [5], [6], [7].

Defendants maintain that, after Plaintiff was injured, he "immediately received appropriate medical care," including a "history and examination . . . completed by a qualified provider," X-rays "to evaluate Plaintiff's [fractures]," and treatment of those fractures "with a

2

sling, a brace, pain medication and a wheelchair," along with a "referral to a specialist." Doc. [18] at 7; Doc. [18-1] at 18-19. In response to Plaintiff's argument that Defendants should have approved surgery for his injuries, Defendants assert that Plaintiff's "treating orthopedic surgeon wanted a CT scan . . . and a follow-up [X-ray]" of Plaintiff's injuries, both of which "were approved and took place within a reasonable amount of time." Doc. [18] at 8; Doc. [18-1] at 18-19. Upon reviewing the imaging results, the orthopedic surgeon "found evidence of healing such that surgery was no longer advisable." Doc. [18] at 8; Doc. [18-1] at 138-39, 188-89.

As for the medical assistive devices, Defendants contend that Plaintiff's wheelchair was no longer "clinically necessary," as "Plaintiff had been observed on multiple occasions being able to ambulate without difficulty or any objective sign of pain." Doc. [18] at 8; Doc. [18-1] at 432. According to Defendants, remaining in a wheelchair would "put Plaintiff at risk for unnecessary muscle atrophy and other conditions." Doc. [18] at 8; Doc. [18-1] at 295, 314-15. His medical records further indicate that he was issued a cane on December 2, 2022, as his treating physician noted that Plaintiff "has had chronic pain since assault in 2020 and been keeping himself in a wheelchair," and that he "[n]eeds exercises and strengthening to walk again and help [with activities of daily living]." Doc. [18-1] at 431-32.

In reply, Plaintiff insists that "Defendants failed to send Plaintiff to an emergency specialized care facility," neglected to "approve Plaintiff for shoulder surgery following 2 recommendations of orthopedic surgeons," then retaliated against him by confiscating his medical assistive devices. Doc. [28] at 1-2. While Plaintiff argues that he is unable "to walk any distance without pain . . .," Doc. [28] at 9, he provides no evidence contradicting the assessment in his medical records that he can "ambulate from inside cell to outside of cell without noted difficulties[.]" Doc. [18-1] at 432.

Plaintiff has not shown that a "constitutional violation has already occurred" or that "the threat of such a violation is both real and immediate." *Goff*, 60 F.3d at 521 (quoting *Rogers*, 676 F.2d at 1214). Plaintiff's grievances focus on the mode or course of Defendants' treatment of his December 24, 2020, injuries—including the decisions not to treat those injuries at an emergency-care facility and not to approve surgery and, eventually, to remove his wheelchair and other assistive devices. In response to his grievances, Defendants have provided evidence that Plaintiff received prompt treatment for his injuries and that the decisions to which he objects were made by qualified treatment providers. *See* Doc. [18-1] at 18-19, 138-39, 188-89, 319.

3

While Plaintiff might personally prefer different treatment, "inmates have no constitutional right to receive a *particular* or *requested* course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (emphases added).

Plaintiff has also failed to demonstrate a threat of irreparable harm.  He argues that he has been unable to receive his insulin for his diabetes since Defendants confiscated his wheelchair, Doc. [1] at 16, 23, but his medical records belie that assertion.  As discussed above, Plaintiff's records indicate that he can walk without a wheelchair.  Those records also reveal that he has refused to take his insulin on multiple occasions over the past two years.  *See, e.g.*, Doc. [18-1] at 35, 45, 47, 60-62, 66, 77, 84, 89, 97, 104, 107, 115, 124, 134, 136, 146, 162, 264, 385, 416-17. Thus, Plaintiff has failed to show that he cannot receive his insulin without using a wheelchair. And even if he had made such a showing, his practice of frequently refusing his insulin weakens his claim that he will suffer irreparable injury absent Court intervention.  Moreover, Defendant Lovelace (the statewide Medical Director for Centurion Medical Services) represents to the Court that, "should Plaintiff face a medical emergency, the correctional officers would alert the medical staff who would come to Plaintiff's location and provide assistance." Doc. [18-1] at 10.

Because Plaintiff has shown neither a probability that he will succeed on the merits of his claims nor a threat of irreparable harm, the Court denies his motion for injunctive relief.  *See Dataphase Systems*, 640 F.2d at 113; *see also Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987) ("Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted.").

## II.     Motion for Appointment of Counsel

Plaintiff also asks the Court to appoint him counsel.  Doc. [4].  In civil cases, a pro se litigant has no constitutional or statutory right to appointed counsel.  *See Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013); *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  A district court may appoint counsel if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where 'the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel.'" *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)).  When determining whether to appoint counsel for an indigent litigant, a court considers criteria such as

"the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

Upon review of those criteria, the Court concludes that appointment of counsel is not warranted at this time. Plaintiff has demonstrated, to this point, that he can adequately present his claims to the Court. And neither the factual nor the legal issues in this case appear to be especially complex. Thus, the Court denies the motion, but it will entertain future motions for appointment of counsel as this case progresses.

### III.     Motion for Order to Show Cause and Appointment of Counsel

In a separate filing, styled as a "Declaration for Order to Show Cause and Appointment of Counsel, Plaintiff again moves the Court "For an Order Granting Plaintiff's Motion for Temporary Restraining Order" and requests that the Court "Grant Plaintiff's Motion for Appointment of Counsel." Doc. [26] at 1. Based on the relief sought, the Court construes the "Declaration" as a motion seeking favorable rulings on Plaintiff's earlier motions for injunctive relief and appointment of counsel. Given the Court's denial of those two motions herein, the Declaration for Order to Show Cause and Appointment of Counsel, Doc. [26], is now moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order and a Preliminary Injunction, Doc. [5], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel, Doc. [4], is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Declaration for Order to Show Cause and Appointment of Counsel, Doc. [26], is **DENIED as moot**.

Dated this 23rd day of January, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE