UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. MANZELLA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-01338-MAL |
| | ) | |
| ANGELA ADAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM & ORDER**

Before the Court is the Motion for Summary Judgment filed on behalf of Defendants Nurse Karen S. Rose, Dr. Jerry Lovelace, Dr. William Dennis, and Director Todd Renshaw (Doc. 91). Also before the Court is the Cross-Motion for Summary Judgment filed by Plaintiff Mark Manzella with respect to each of those Defendants as well as Defendant Nurse Adams (Doc. 94). For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgement and **DENIES** Manzella's Cross-Motion for Summary Judgment.

## I.      Undisputed Material Facts and Procedural History

*Pro se* Plaintiff Mark Manzella is an inmate at the Eastern Reception Diagnostic and Correctional Center (ERDCC) in Bonne Terre, Missouri (Doc. 73, p. 15, Doc. 69 p. 39). On December 24, 2020, Manzella was involved in a fight with another inmate, resulting in bodily injury to Manzella (Doc. 92 ¶ 1; Doc. 95, ¶ 1). X-rays were promptly ordered of Manzella's left shoulder, right ankle, and ribs (Doc. 92 ¶ 2; Doc. 95 ¶ 2). The x-ray revealed several bone fractures (Doc. 92 ¶¶ 3–5; Doc. 95 ¶ 3–5). Manzella saw Dr. Galbraith on January 6, 2021,[1] Dr. Tippen on February 18, 2021,[2] Dr. Gray on August 20, 2021,[3] and Dr. Toedebush on December 29, 2021.[4]

---

[1] Doc. 92 ¶ 6; Doc. 95 ¶ 6.
[2] Doc. 92 ¶ 10; Doc. 95 ¶ 10.
[3] Doc. 92 ¶ 18; Doc. 95 ¶ 18.
[4] Doc. 92 ¶ 19; Doc. 95 ¶ 19.

1

ERDCC's physician—Dr. Lovelace—consulted Dr. Smith about Manzella's injuries on February 24, 2022.[5]  Manzella began physical therapy treatment in April 2021 (Doc. 92 ¶ 13; Doc. 95 ¶ 13).

On August 20, 2021, Dr. Gray recommended Manzella receive a shoulder replacement, but on December 29, 2021, Dr. Toedebush opined that he did not recommend Manzella receive a shoulder replacement at that time (Doc. 92 ¶¶ 18–19; Doc. 92-2, pp. 252, 273; Doc. 95 ¶¶ 18–19). Manzella asserts and Defendants do not deny that—to this date—Manzella has not received shoulder replacement surgery (Doc. 98 ¶ 7).  Manzella filed an Americans with Disabilities Act complaint in October 2022, followed by a request for investigation for denial of medical treatment (Doc. 69, pp. 34–35; Doc. 93, p. 9).  At some point, Manzella had received a medical lay-in[6] for a wheelchair-accessible cell and a wheelchair pass, which were later revoked (Doc. 92 ¶¶ 22, 24; Doc. 95 ¶¶ 22, 24).

Then Manzella brought this suit against Corizon Health Services ("Corizon") (which was providing medical services to ERDCC) and several of its employees (Doc. 1).  In his operative complaint, Manzella sues Nurse Karen Rose (a Corizon nurse practitioner), Dr. Jerry Lovelace (Corizon's Regional Director), Dr. William Dennis (Corizon's Site Director), Todd Renshaw (Corizon's Director of Nursing and subsequently Chief Operations Officer) (Doc. 69 ¶¶ 10–14; Doc. 73 ¶¶ 9–13); and Nurse Adams (Corizon Nurse) (Doc. 69 ¶ 10).  The operative complaint asserts that Nurse Rose, Dr. Lovelace, Dr. Dennis, and Renshaw violated the Eighth Amendment by failing to follow up on Manzella's injuries and by removing his wheelchair and medical lay-ins (Doc. 69, pp. 33–34).  Additionally, Manzella contends that Dr. Lovelace violated the Eighth Amendment by failing to send him for emergency care on December 24, 2020, and by failing to approve shoulder replacement surgery.  *Id*.  Defendants now move for summary judgment on the claims against Nurse Rose, Dr. Lovelace, Dr. Dennis, and Renshaw (Doc. 91).  Manzella brings a cross-motion for summary judgment on all counts against the same four defendants *and* Nurse Adams (Doc. 97).

---

[5] Doc. 92 ¶ 20; Doc. 95 ¶ 20.  Note that Manzella objects to this on the grounds of hearsay (Doc. 95 ¶ 20).  However, this statement appears in Manzella's medical record, which Manzella attaches with his statement of uncontroverted material facts (Doc. 98, p. 75).  Manzella also does not seem to contest that Dr. Lovelace spoke with Dr. Smith, but rather controverts Dr. Lovelace's statement about the conversation.

[6] Neither party defines what a medical lay-in is.  The record reflects entry of "lay-ins," which are documents by medical professionals describing the medical assistance Manzella requires (Doc. 98 at 87–98).

Defendants move for Summary Judgment on the grounds that Manzella's deliberate indifference and retaliation claims are unsupported (Doc. 91 ¶ 9). Defendants further allege that Manzella's state-law negligence and medical malpractice claims must be dismissed for failure to comply with Mo. Rev. Stat. § 538.225. *Id*. at ¶ 11. Manzella also moved for summary judgment, largely reiterating the points he makes in his Complaint (Docs. 94, 97).

## II.      Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Material facts are those that "may 'affect the outcome of the suit.'" *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] ... raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078–79 (8th Cir. 2008)). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996). "Cross-motions for summary judgment require viewing the evidence in the light most favorable to the plaintiff and defendant in turn, depending on whose motion is being considered." *Pitman Farms v. Kuehl Poultry, LLC*, 48 F.4th 866, 875 (8th Cir. 2022). A "pro se document is to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022).

## III.     Application of Legal Standard to Facts

### A.  Deliberate Indifference Claims

The Defendants minus Nurse Adams argue that this Court should grant summary judgment in their favor because Manzella cannot meet his burden of proof to demonstrate that they were deliberately indifferent to his injuries. Defendants argue that Manzella's claims fail because

Defendants provided Plaintiff adequate and extensive medical care (Doc. 93, p. 5). Manzella argues that the delay in his care, and the fact he did not receive the medical care he believes he required, amounts to deliberate indifference in violation of the Eighth Amendment.

### i. Legal Standard

"When a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To prevail on an Eighth Amendment deliberate indifference claim, Manzella must establish (1) he suffered objectively serious medical needs and (2) prison officials actually knew of but deliberately disregarded those needs. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "[T]he deliberate-indifference standard is difficult to meet." *Joseph v. Wheeler*, 144 F.4th 1111, 1113 (8th Cir. 2025). This standard "includ[es] both an objective and subjective component." *Id*. "Deliberate indifference is equivalent to the criminal law standard of recklessness—a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007) (internal quotation marks omitted). "Negligence is not enough." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). Even medical treatment that is inadequate and may amount to negligence in a state-law tort case may not rise to the level of a constitutional violation because there must be actual knowledge of the risk of harm, followed by deliberate inaction. *Bryan v. Endell*, 141 F.3d 1290, 1291 (8th Cir. 1998). "A prison official's knowledge may be established by circumstantial evidence: a factfinder may conclude that the official knew of a prisoner's serious medical needs based on the fact that the needs were obvious." *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

### ii. Application of Law to Facts

#### a) Claim Against Dr. Lovelace for Declining to Approve Shoulder Surgery

Dr. Lovelace's failure to approve shoulder surgery does not amount to deliberate indifference because prong two of the deliberate-indifference analysis is not met. Though Manzella quibbles with the characterization of some of Defendants' statements of material fact (Doc. 95), the parties agree that Manzella was seen by multiple doctors after the December 24,

4

2020 incident regarding his shoulder.[7]  Manzella's medical record—that both parties rely  on—is clear that outside physicians recommended physical therapy as the course of action for treating Manzella's shoulder injury (Doc. 92-2, pp. 13–15).  Manzella's medical record reflects an outside physician, Dr. Galbraith, requested an MRI to "know if his rotator cuff is intact or not before he could have a shoulder replacement.  If his rotator cuff is torn, then he's going to need a reverse total shoulder.  Otherwise, he's to continue with his exercise and range of motion and strengthening for his left shoulder." *Id*. at p. 16.  Manzella then underwent an MRI, which showed "no rotator cuff pathology." *Id*. at 18.  His medical record also reflects that he was later seen by another outside physician, Dr. Gray, who recommended shoulder-replacement surgery.  *Id*. at p. 20.  Another outside physician, Dr. Toedebusch, did not recommend shoulder-replacement surgery.  *Id*. at p. 21.  Manzella's medical record also reflects an entry by Dr. Lovelace, writing:

> I was able to speak to Dr. Matthew Smith, an orthopedist at the University of Missouri, regarding Mr. Manzella's case today.  He advised me that he was unable to perform surgery on Mr. Manzella's shoulder.  His rationale was that there would be no to little improvement in performing the surgery but a real possibility of complications and loss of function particularly due to his age and diabetes.

*Id*. at 22.  Dr. Lovelace's decision against shoulder surgery does not create the inference that he deliberately disregarded Manzella's medical needs.  Manzella was seen by several outside specialists and had a physical therapy plan for his shoulder.  This care is not "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1242 (8th Cir. 1997).

While Manzella is entitled to medical treatment, he is not entitled to shoulder surgery when medical professionals disagree about whether that surgery is necessary.  "[Manzella has] no constitutional right to receive a particular or requested course of treatment, and [medical professionals] remain free to exercise their independent medical judgment." *Id*. at 1239.  "[A] prison doctor 'is free to make his own, independent medical determination as to the necessity of

---

[7] Manzella objects to many of Defendants' characterizations of what doctors concluded regarding shoulder surgery for him.  Because Manzella contests Defendants' summary of the recommendations, the Court looks to exhibits included in the Motion, including Manzella's medical file. Fed. R. Civ. P. 56(c) provides: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).  While Manzella contests Defendants' characterizations, he often does not offer evidence beyond his own conclusions for doing so.

certain treatments or medications, ***so long as*** the determination is based on the physician's ***professional judgment*** and does not go against accepted professional standards." *Dantzler v. Baldwin*, 133 F.4th 833, 846 (8th Cir. 2025) (quoting *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (emphasis in original)).  Manzella does not introduce evidence that Dr. Lovelace's decision goes against accepted professional standards.   Where several physicians evaluated Manzella, and some physicians recommended no surgery and only one recommended surgery, Dr. Lovelace was free to use his professional judgment to determine whether Manzella needed the surgery.   As such, the Court grants summary judgment in favor of Dr. Lovelace regarding his decision to deny shoulder surgery.

> **b)**      **Claim Against Dr. Lovelace for Delay in Sending Manzella to Emergency Care Facility**

Manzella's Complaint alleges a deliberate indifference claim against Dr. Lovelace for failing to send him to an emergency care facility for proper specialized care on December 24, 2020, leaving his injuries to heal as-is.  Manzella moves for summary judgment based on this count (Doc. 97, pp. 3–4).   X-rays were performed on Manzella promptly after the altercation, but Manzella contends Dr. Lovelace failed to timely treat him.  *Id*. at p. 3.   Defendants argue that for delay in medical treatment and failure to send Manzella to an emergency department to constitute deliberate indifference, Manzella "'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'" (Doc 101, p. 2) (quoting *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)).

The Eighth Circuit has held that "where an inmate submitted evidence documenting his diagnosis and treatment, but he offered no evidence establishing that any delay in treatment had a detrimental effect, the inmate failed to raise a genuine issue of fact on an essential element of his claim." *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (cleaned up).  Further, the Eighth Circuit has upheld summary judgment for defendants where neither the inmate-plaintiff nor defendants "submitted verifying medical evidence indicating that a delay in treatment resulted in an adverse effect." *Id*. (citing *Dulany*, 132 F.3d at 1243).

When an "inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by reference to the ***effect*** of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995).  To establish this, "the

6

inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id*.  Manzella has not offered any evidence that a delay in sending him to the emergency room had a detrimental effect beyond his own conclusory assertions.  A medical professional is not necessarily deliberately indifferent for failing to schedule an appointment immediately.  *Hartsfield*, 491 F.3d at 398 (doctor not deliberately indifferent for delaying referring an inmate to dentist where doctor first prescribed ibuprofen in accordance with his standard protocol and recognized medical standards of care); *Logan v. Clarke*, 119 F.3d 647, 650 (8th Cir. 1997) ("Although the prison doctors may not have proceeded from their initial diagnosis to their referral to a specialist as quickly as hindsight perhaps allows us to think they should have, their actions were not deliberately indifferent."). Because Manzella fails to proffer medical evidence that a delay in sending him to emergency care resulted in an adverse effect, the Court grants summary judgment in favor of Defendants.

### c)      <u>Claim that Defendants Failed to Follow up on Manzella's Injuries</u>

Manzella alleges Defendants failed to follow up on his injuries, constituting deliberate indifference (Doc. 69 ¶ 116).  The Defendants (minus Nurse Adams) argue this allegation is contrary to Manzella's medical record (Doc. 93, p. 8).  The Court concludes that, because Manzella received several outside medical consultations, Manzella cannot establish the standard of criminal recklessness required for a deliberate-indifference claim. *Hartsfield*, 491 F.3d at 397 ("Deliberate indifference is equivalent to the criminal law standard of recklessness.").

Manzella's medical record reflects, and Manzella admits, he was seen by an outside physician on January 6, 2021, followed by numerous outside appointments—including for physical therapy and further imaging services (Doc. 92-2, p. 9; Doc. 95, ¶ 6).  These facts do not reflect that Defendants were aware of and deliberately disregarded Manzella's medical needs.  In the alternative, if Manzella's argument is rooted in his belief that he should have been seen by medical providers sooner or more frequently, mere disagreement with a course of treatment does not state a cognizable claim under 42 U.S.C. § 1983. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (Plaintiff failed to state Eighth Amendment deliberate indifference claim where complaint represented "nothing more than mere disagreement with the course of his medical treatment"). Manzella has failed to show the Defendant medical providers deliberately disregarded his medical needs.  The Court grants summary judgment in favor of Defendants on this count.

**d)**    **Claim for Removing Manzella's Wheelchair and Medical Lay Ins**

Manzella brings an Eighth Amendment claim against Defendants for "removing Plaintiff[']s necessary medical assistive devices and lay-ins, causing the confiscation of Plaintiff[']s wheelchair, pillows, eggcrate mattress, wedge, and other items." (Doc 69, p. 34, ¶ 118). Manzella argues that removing his wheelchair while knowing he cannot walk constitutes cruel, unusual, and inhumane punishment. *Id*. at ¶ 119; Doc. 94, p. 9. Manzella further alleges that removal of his wheelchair and other lay-ins were retaliatory actions following his filing of a complaint for being removed from his handicap cell. *Id*. The Court construes Manzella to be arguing that the close temporal proximity of his medical lay-ins being removed and him filing a complaint (two months between them) is evidence of retaliation constituting cruel and unusual punishment (Doc. 94, p. 9). Manzella also suggests that there is evidence of retaliation because "all layins which were wrongfully removed by these Defendants have since been reinstated." (Doc. 98 p. 2).

Defendants move for summary judgment on this count, arguing the lay-ins were removed because they were no longer medically necessary and that there is no proof Defendants retaliated against Manzella (Doc. 93, p. 9). Defendants' also argue that Manzella has failed to create a genuine issue of material fact, as his claim that his lay-ins were removed in retaliation is a self-serving conclusory statement (Doc. 101, p. 3).

### i.    Eighth Amendment Claim

Manzella's cruel and unusual punishment claim is subject to a deliberate-indifference standard. "[T]he deliberate indifference standard applies to claims against prison officials responding to prisoners' serious and urgent medical needs." *Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007); *see also Joseph v. Wheeler*, 144 F.4th 1111, 1113 (8th Cir. 2025) (applying deliberate indifference standard to Eighth Amendment claim). To prevail on a deliberate-indifference claim, Manzella needs to prove he had (1) an objectively serious medical need; and (2) prison officials actually knew of but deliberately disregarded those needs. *Jolly*, 205 F.3d at 1096. "An objectively serious medical need is one that has been 'diagnosed by a physician as requiring treatment' or one 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022) (quoting *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)). However, even with a medical diagnosis, prison officials who respond to and treat plaintiff's medical needs "can be

8

'found free from liability if they respond[ ] reasonably to a risk, even if the harm ultimately was not averted.' " *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1970)).

The Court cannot issue summary judgment in favor of defendants. First, there is a genuine issue of material fact about whether Manzella was suffering from an "objectively serious medical need[]" when his lay-ins were taken away. *Jolly*, 205 F.3d at 1096. Second, there is a genuine issue of material fact about whether prison officials "actually knew of but deliberately disregarded those needs." *Id*.

With respect to an objectively serious medical need—Manzella's medical record reflects that he was seen by physicians after the altercation. He also received lay-ins sometime after the altercation, which is evidence that he may have at one time had a serious medical need. Defendants proffer evidence that Manzella's lay-ins were removed because medical staff determined the lay-ins were no longer medically needed (Doc. 92 ¶ 22; Doc. 92-2 p. 25; Doc. 93, p. 9), which suggests that Manzella no longer had a serious medical need at the time the lay-ins were removed. But the fact that the lay-ins were later ***reinstated*** suggests that Manzella may have had a serious medical need the whole time after all. This creates a genuine dispute of material fact about an objectively serious medical need.

With respect to whether prison officials actually knew of but deliberately disregarded those needs, Defendants proffer evidence that Manzella's lay-ins were removed because medical staff determined that the lay-ins were no longer medically necessary. (Doc. 92 ¶ 22; Doc. 92-2, p. 25). But Manzella proffers evidence both that his lay-ins were removed after he made an ADA request and that, after some time had passed, his lay-ins were reinstated (Manzella states he filed a complaint on October 6, 2022 (Doc. 69, p. 34–35l Doc. 98, p. 101), and his medical record reflects lay-ins were removed December 1, 2022 (Doc. 98, p. 84)). This could be understood by a reasonable jury to cast doubt on the true motive of the prison officials taking away the lay-ins. Therefore, there is a genuine dispute of material fact about whether prison officials actually knew of, but deliberately disregarded Manzella's needs.

### ii.      Claim under the First Amendment

Though Manzella does not specifically state that his § 1983 retaliation claim is a First Amendment claim, the Court liberally construes his pleading to include such grounding. Inmates have the right to be free from retaliation for availing themselves of the prison grievance process.

*See Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013).  To prevail on a First Amendment § 1983 retaliation claim, an inmate must show "(1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity." *Id*. (citing *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). To show element three—retaliation—Manzella "must show the protected activity was a but-for cause of the adverse action, meaning that the adverse action against the plaintiff would not have been taken absent a retaliatory motive." *De Rossitte*, 22 F.4th at 804 (cleaned up).  "[M]ere allegations of retaliatory motive are insufficient," and the question "may provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Id*. (cleaned up).  Further, "mere temporal proximity between the protected activity and the purported retaliatory activity is insufficient to support a retaliation claim." *Prosser v. Nagaldinne*, 927 F. Supp. 2d 708, 734 (E.D. Mo. 2013) (citing *Johnson v. Arkansas State Hosp*., 282 F. App'x 497, at *2 (8th Cir. 2008), in which the Eighth Circuit held that temporal proximity between appellants' filing of an EEOC complaint and termination from a job was insufficient to establish a causal connection).

The Court construes Manzella to be arguing that the close proximity of his medical lay-ins being removed to him filing a complaint (two months between them) is evidence of retaliation (Doc. 94, p. 9; Doc. 98 p. 2).  If this were Manzella's only evidence, he would be unable to establish a genuine issue of material fact.  But this is not Manzella's only evidence.  Manzella offers evidence that his lay-ins were put back in place between two and three years later, which could imply that they should never have been removed to begin with.  Defendants' Reply argues that Manzella has failed to create a genuine issue of material fact, as his claim that his lay-ins were removed in retaliation is a self-serving conclusory statement (Doc. 101, p. 3).  Defendants also argue that removal of Manzella's lay-ins was an exercise of professional judgment, not retaliation for engaging in protected speech.  *Id*.; Doc. 92-2, p. 25 ("Layin Review:  Handicapped cell not medically necessary…").

These competing theories create a genuine issue of material fact about whether the lay-in removal "was motivated at least in part by the exercise of the protected activity." *Santiago*, 707 F.3d at 991.  While the temporal proximity between Manzella's complaint and removal of the lay-ins alone is likely too tenuous, the fact Manzella's lay-ins were reinstated could suggest foul play.

10

On the other hand, it could suggest that Manzella's medical needs were evolving and there were points in time where the lay-ins were needed and times where they were not needed.  Or it could indicate that different medical providers had different opinions about how best to care for Manzella's medical needs.[8]  Because "a reasonable jury could return a verdict for [either] party," the Court declines to grant summary judgment to either party on this count.  *Anderson*, 477 U.S. at 248.

#### e)      Claims Against Nurse Adams

Manzella's Cross Motion for Summary Judgment asks for summary judgment on behalf of every claim in his Amended Complaint (Doc. 94, p. 5), and his memorandum in support of his motion for summary judgment asks for summary judgment against Nurse Adams (Doc. 97, p. 1, 5).  The only time Manzella directly addresses Nurse Adams again is to say that "Defendant[] Adams … systematically delayed or denied treatment plans." (Doc. 94, p. 11).  This does not meet the *Celotex* standard of "informing the district court of the basis for [his] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [he] believes demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323.  The Court accordingly denies Manzella's motion for summary judgment as to Nurse Adams.

### B.  State Law Claims

Manzella brings a state-law claim for negligence and medical malpractice under the same allegations that give rise to the alleged Eight Amendment violation for failure to follow up on Manzella's injuries (Doc. 69, pp. 33–34).  Defendants assert that Manzella's state-law claim must fail because he did not comply with the requirements of Mo. Rev. Stat. § 538.225. That statute provides:

> In any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services, the plaintiff or the plaintiff's attorney shall file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonable prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

---

[8] The parties do not make clear how medical lay-in determinations are made.

11

Since the parties filed motions for summary judgment, the United States Supreme Court held that a similar Delaware statute requiring an affidavit for medical malpractice claims conflicted with Federal Rule of Civil Procedure 8, which governs pleading requirements. *Berk v. Choy*, 146 S. Ct. 546, 554 (2026). "[A] valid Rule of Civil Procedure displaces contrary state law even if the state law would qualify as substantive under *Erie*'s test." *Id*. at 552. This Court believes the reasoning barring application of Delaware's law in federal court is applicable here.

Under Delaware law, a medical malpractice complaint must be accompanied by an affidavit of merit signed by a medical professional stating that there are "reasonable grounds to believe there has been health-care medical negligence committed by each defendant." *Id.* at 551 (quoting Del. Code, Tit. 18, § 6853(a)(1) (2025)). The Supreme Court held that the affidavit requirement conflicts with Rule 8, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "By requiring no more than a statement of the claim, Rule 8 establishes implicitly, but with unmistakable clarity, that evidence of the claim is **not** required." *Berk*, 607 S. Ct. at 553 (cleaned up) (emphasis in original). The Supreme Court held that Delaware's affidavit requirement is at odds with Rule 8 because it requires more than a plain statement. *Id.* at 554.

Missouri's law similarly conflicts with federal procedural requirements. Section 538.225 of the Missouri Revised Statutes requires a plaintiff claiming damages for personal injury or death from health care services to file—within 90 days of filing his complaint—an affidavit from a health care provider stating, "the defendant health care provider failed to use such care as a reasonable prudent and careful health care provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition." Mo. Rev. Stat. § 538.225. Like Delaware's law, this Missouri statute requires more than a short and plain statement under Rule 8. Because Rule 8 is a valid Rule of Civil Procedure, *Berk*, 146 S. Ct. at 557, it displaces Missouri's state law requiring more than a short and plain statement. Accordingly, Manzella need not file a medical affidavit to proceed with his state medical malpractice claim in federal court.

Defendants do not attack Manzella's state law claim on any other grounds. Because the affidavit-requirement argument fails, the Court declines to grant summary judgment in favor of Defendants on the state-law claims.

Manzella's cross motion for summary judgment on the state-law claims does not "inform[] the district court of the basis for [his] motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [] demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quotation marks omitted).  In fact, Manzella's motion does not identify any of the elements for either claim and does not identify portions of the pleadings or any other record to support these claims.  Accordingly, the Court also denies summary judgment for Manzella on the state-law claims.

### CONCLUSION

It is hereby ordered that Defendants Nurse Karen S. Rose, Dr. Jerry Lovelace, Dr. William Dennis, and Todd Renshaw's Motion for Summary Judgment (Doc. 91) is **GRANTED** with respect to the deliberate indifference claims regarding declining to approve shoulder surgery, delay in sending Manzella to emergency care, and failure to follow up on Manzella's injuries and **DENIED** with respect to Manzella's removal-of-lay-ins claims and state-law claims.  Manzella's Cross-Motion for Summary Judgment is **DENIED**.

Dated this 27th day of March, 2026.

_____
MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

13